### STATE v. GEORGE ALSTON.

(Filed 15 June, 1936.)

**1. Criminal Law I c—**

The order in which the witnesses are called to testify is in the sound discretion of the trial court.

**2. Homicide H c—**

Where all the evidence shows defendant intentionally killed deceased with a deadly weapon, it is not error for the court to refuse to submit to the jury the question of manslaughter.

STATE *v.* ALSTON.

**3. Criminal Law I g—**

   Where the court repeatedly charges the jury that the burden is on the State to prove every element of the offense beyond a reasonable doubt, and then fully defines "reasonable doubt," the charge is sufficient on this aspect, and an exception to its failure to call attention to the presumption of innocence is untenable.

**4. Homicide H c—**

   Where all the evidence establishes an unlawful killing with a deadly weapon committed by defendant, it is not error for the court to instruct the jury that if they believe the evidence beyond a reasonable doubt to return a verdict of guilty of murder in the second degree, at least.

**5. Homicide B a: H c—Intoxication precludes verdict of first degree murder only when sufficient to prevent premeditation and deliberation.**

   Since premeditation and deliberation are essential elements of the crime of murder in the first degree, intoxication to the extent that the mind is incapable of this essential mental process, precludes a verdict of first degree murder, but the charge in this case *is held* without error in this respect on defendant's appeal from a conviction of the capital crime.

APPEAL by defendant from *Barnhill, J.,* at December Term, 1935, of ORANGE. No error.

Indictment for murder. The jury returned a verdict of guilty of murder in the first degree, and from judgment imposing sentence of death therefor defendant appealed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*C. P. Hinshaw and E. C. Brooks, Jr., for defendant.*

DEVIN, J. The State's evidence tended to show an unprovoked, willful, and premeditated killing. It appeared that defendant met the deceased, a girl named Helen Massey, on the street in Chapel Hill on the evening of 6 May, 1935, and after some words she ran from him, and he pursued her; that she took refuge in a cafe and locked the front door behind her; that he ran around to the back and she, in the effort to escape, unlocked the front door, when he suddenly rushed back to the front, entered the cafe, and shot her three times, and pursued her as she fled mortally wounded; that he had formerly kept company with her, but she had apparently tired of his attention and ceased to go with him; that he had stated he intended to kill her and this intent had been communicated to her; that he had been employed for six or seven years as servant and gardener for Mr. McClamrock in Chapel Hill; that the pistol used on the occasion was one he had taken from the dresser drawer in the home of his employer; that he had been drinking for some time before this, and had been drinking at the time of the shooting.

On behalf of the defendant, Dr. Harry W. Crane, an expert in the field of abnormal psychology, testified the defendant was mentally defective, with the mental development only of a child. There was evidence from Dr. Ashby, superintendent of State Hospital at Raleigh, and from defendant's employer and others that he knew right from wrong, that he had been a faithful servant in and about the home of his employer for a number of years, and his general reputation was good. Counsel for defendant during the trial withdrew plea of insanity and admitted that defendant had shot the deceased with a pistol and inflicted wounds from which she shortly thereafter died.

Defendant noted several exceptions during the trial, all of which we have examined with the care which the gravity of the consequences to the defendant requires. The objection to the court's permitting Dr. Ashby to testify out of turn is untenable. It was a matter of discretion and in no way prejudicial. The defendant excepted to the court's failure to charge as to manslaughter. There was no evidence of manslaughter and the trial judge properly excluded the consideration of that degree of homicide from the jury.

Nor can the objection that in the charge the judge failed to call attention to the presumption of innocence be sustained. The burden on the State to prove every element of the offense charged beyond a reasonable doubt was repeatedly and fully stated to the jury, and the meaning of reasonable doubt explained. This was sufficient. S. v. Rose, 200 N. C., 342; S. v. Herring, 201 N. C., 543; S. v. Ferrell, 202 N. C., 475.

Both in the oral argument and by brief the counsel for the defendant forcefully presented his view that there was error in the charge of the court as to second degree murder and as to the effect of intoxication upon the capacity of the defendant to form the intent necessary to sustain the charge of murder in the first degree.

The excerpt from the charge specifically assigned as error is as follows: "Now, gentlemen, upon the evidence, if you believe it beyond a reasonable doubt, and find therefrom that the defendant killed the deceased with a deadly weapon, a pistol, that is, that he shot her, inflicted a wound, that she died as a proximate result of wounds thus inflicted, if you find that to be a fact beyond a reasonable doubt, and from the evidence and from the admissions, then it would be your duty to return a verdict of at least guilty of murder in the second degree."

This charge is in accord with the principles laid down in the authoritative decisions of this Court. S. v. Ferrell, supra; S. v. Miller, 197 N. C., 445; S. v. Walker, 193 N. C., 489; S. v. Fowler, 151 N. C., 731. In the case at bar the trial judge had defined fully and accurately the different degrees of murder, and explained that murder in the second degree was the unlawful killing of a human being with malice, and

defined malice in law as "that condition of the mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification," and that it was implied from a killing with a deadly weapon. *Betts v. Jones,* 208 N. C., 410.

The defendant contends the court below failed to charge as to the necessity of finding a specific intent on the part of defendant, and that if the defendant was so intoxicated as to be incapable of entertaining such specific intent, and unable to premeditate and deliberate, he could not be guilty of murder in the first degree.

But upon examination of the charge as a whole, we find no error in this respect. After calling the attention of the jury fully to the evidence offered by the defendant as to his intoxication and his defective mentality, and stating his contention that as a result of one or both of these causes he could not premeditate and deliberate, and could not arrive at a conclusion and form a purpose to kill, and that the jury should have a reasonable doubt as to his capacity to do so at the time, the court charged the jury as follows: "The court further instructs you, as it has already done, that there are two things necessary, that is, that he must deliberate upon it and form the fixed design to kill, then he must deliberate and in cold blood execute that design, so that if you find he had thought about it and revolved it over in his mind prior to that particular night, but on that particular night he was so much under the influence of liquor that he did not have the capacity to deliberately execute the design, he would not be guilty of murder in first degree."

"Likewise, the court instructs you that the fact that he may have taken some whiskey would not be ground upon which you could refuse to return a verdict of guilty of murder in the first degree; so far as the charge of murder in the second degree is concerned a drunken condition doesn't excuse him, but where he is charged with murder in the first degree, it is your duty to consider whether or not in the first place he had taken any whiskey, and in the second place if he had taken a sufficient quantity so that he could not deliberate or premeditate the killing. And if his mind was in such condition from the use of liquor or from the fact that it had not developed, or from any other cause, that he could not premeditate and deliberate, then you would not return a verdict of guilty of murder in the first degree."

It is well settled in this jurisdiction that, while voluntary drunkenness is no legal excuse for crime, this principle is not allowed to prevail when in addition to the overt act it is required that a definite specific intent be established as an essential element of the crime. "When a specific intent is essential to constitute crime, the fact of intoxication may negative its existence." Clark's Crim. Law, 72.

Since the crime of murder has been divided into two degrees and it becomes necessary in order to convict the defendant of murder in the first degree to establish that the killing was willful, deliberate, and premeditated, and that the purpose to kill was previously formed after weighing the matter, a mental process embodying a specific, definite intent is involved, and if it is shown that the person charged was so drunk as to be unable to form or entertain this mental purpose, he should not be convicted of murder in the first degree. This principle, however, does not apply to murder in second degree or manslaughter. *S. v. Murphy,* 157 N. C., 614; *S. v. English,* 164 N. C., 497; *S. v. Foster,* 172 N. C., 960; *S. v. Allen,* 186 N. C., 302; *S. v. Williams,* 189 N. C., 616; *S. v. Ross,* 193 N. C., 25; *S. v. Hauser,* 202 N. C., 738; *S. v. Vernon,* 208 N. C., 340.

The judge's charge to the jury gives the defendant no just ground of complaint, and the exceptions thereto cannot be sustained.

After a careful examination of the entire record, we conclude that in the trial there was

No error.